UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIVECOR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 21-cv-03958-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**<br><br>Re: Dkt. No. 47 |

Now before the Court for consideration is the motion to dismiss Defendant Apple Inc.'s ("Apple") counterclaim for indemnification filed by Plaintiff AliveCor, Inc. ("AliveCor"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for May 20, 2022. For the following reasons, the Court GRANTS AliveCor's motion to dismiss the counterclaim.

**BACKGROUND**

AliveCor initiated this lawsuit against Apple on May 25, 2021, alleging antitrust violations and unfair competition claims against Apple. AliveCor alleges that Apple changed the heart rate algorithm on the Apple Watch and watchOS, which rendered AliveCor's heart rate analysis app incapable of providing reliable heart rate analysis. AliveCor alleges Apple's conduct constitutes anticompetitive conduct under federal antitrust laws and is unlawful or unfair conduct under California's Unfair Competition Law.

AliveCor has developed apps for iOS and watchOS. (Counterclaim ¶ 6.) App developers who wish to offer their apps on the App Store, like AliveCor, must enter into several agreements with Apple prior to doing so. (*Id.* ¶ 7.) One such agreement is the License Agreement, which

grants a developer access to tools and software developed by Apple and governs distribution through the App Store for apps that use Apple's software and services. (*Id*. ¶¶ 7-8.) Apple alleges that AliveCor is and remains a party to the License Agreement. (*Id*. ¶ 7.)

The License Agreement contains an indemnification provision which provides:

> To the extent permitted by applicable law, You [AliveCor] agree to indemnify and hold harmless, and upon Apple's request, defend Apple… from any and all claims, losses, liabilities, damages, taxes, expenses, and costs, including without limitation, attorneys' fees and court costs (collectively, 'Losses'), incurred by [Apple] and arising from or related to any of the following:…(i) Your breach of any certification, covenant, obligation, representation or warranty in this Agreement…; (ii) any claims that Your Covered Product or the distribution, sale, offer for sale, use or importation of Your Covered Product (whether alone or as an essential part of a combination), Licensed Application Information, metadata, or Pass Information violate or infringe any third party intellectual property or proprietary rights; (iii) Your breach of any of Your obligations under the EULA…for Your Licensed Application; (iv) Apple's permitted use, promotion or delivery of Your Licensed Application, Licensed Application Information, Safari Push Notification, Safari Extension (if applicable), Pass, Pass Information, metadata, related trademarks and logos, or images and other materials that You provide to Apple under this Agreement…; (v) any claims, including but not limited to any end-user claims, regarding Your Covered Products, Licensed Application Information, Pass Information or related logos, trademarks, content or images; or (vi) Your use (including Your Authorized Developer's use) of the Apple Software or services, Your Licensed Application Information, Pass Information, metadata, Your Authorized Test Units, Your Registered Devices, Your Covered Products, or Your development and distribution of any of the foregoing.

(*Id.*, Ex. A § 10 ("Section 10").) Section 10 also prohibits the app developer from entering "into any settlement or like agreement with a third party that affects Apple's rights or binds Apple in any way…" (*Id.*)

Apple alleges that AliveCor's claims "arise from or relate to, at least in part, [AliveCor's] use of covered Apple Software or Services, its Covered Products, and/or its development of apps submitted to and/or published to the App Store." (*Id*. ¶ 13; *id*. ¶¶ 16-17.) As a result, Apple has filed a counterclaim alleging that it is entitled to indemnification pursuant to Section 10 of the License Agreement including attorney's fees and court costs incurred in defending this litigation and pursuing its counterclaim.

AliveCor moves to dismiss Apple's counterclaim on two bases. First, AliveCor argues a

2

1  defendant cannot recover attorneys' fees or costs incurred defending federal antitrust or UCL
2  unfair competition claims. Second, AliveCor asserts that under California contract law,
3  indemnification provisions are presumptively interpreted as covering only third-party claims.

## ANALYSIS

### A. Applicable Legal Standard.

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. In its pleading, a party must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the party pleads facts that "allow[ ] the court to draw the reasonable inference that [another party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor must the Court " 'accept as true a legal conclusion couched as a factual allegation.' " *Id.* at 678-80 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

### B. Section 10(vi) Is Limited to Indemnification for Third-Party Claims.

Apple asserts that it is entitled to fees and costs under Section 10 because AliveCor's claims arise from and are related to, at least in part, AliveCor's use of covered Apple Software or Services, its Covered Products, and/or its development of apps submitted to and/or published to the App Store. (Counterclaim ¶ 13; *see id*. Ex. A § 10(vi).) AliveCor argues that Apple's counterclaim for indemnification must be dismissed because the provision applies only to third-party disputes, not intra-party disputes.

"Generally, indemnity is defined as an obligation of one party to pay or satisfy the loss or

damage incurred by another party." *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600 (2016) (internal citations and quotations omitted). An indemnity agreement is interpreted according to the language and contents of the contract, as well as the intention of the parties as indicated by the contract, using the same rules that govern the interpretation of other contracts. *Carr Bus. Enterprises, Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (2008).

        Courts look to several indicators to distinguish third party indemnification provisions from provisions for the award of attorney fees incurred in litigation between the parties to the contract. First, the "key indicator is an express reference to indemnification. A clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself." *Alki Partners*, 4 Cal. App. 5th at 600 (citing *Carr*, 166 Cal. App. 4th at 20). Here, Section 10 uses the "indemnify and hold harmless" language. This language applies to each enumerated subsection including Section 10(vi), which is the subsection relevant to Apple's counterclaim.[1] (*See* Counterclaim ¶¶ 14-17.) This indicates that Section 10 was intended to cover third-party claims.

        Second, courts examine the context in which the language appears. "Generally, if the surrounding provisions describe third party liability, the clause will be construed as a standard third-party indemnification provision." *Alki Partners*, 4 Cal. App. 5th at 600 (citing *Myers Bldg. Indus., Ltd v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 970 (1993)).

        Review of the other subdivisions of Section 10 further suggests the provision is intended to only apply to third-party claims. Several subdivisions refer to claims involving the developer's app and clearly contemplate third parties. *See* License Agreement § 10(ii) (applying to disputes where a developer's app "violate[s] or infringe[s] any third party intellectual property… rights"; *id*. § 10(v) (applying to claims regarding the developer's use of "logos, trademarks, content or images" and including "any end-user claims"). Similarly, Section 10(iii) refers to the developer's

---

[1] AliveCor disputes the applicability of Section 10(vi) to its claims. It argues this litigation focuses on AliveCor's inability to use Apple Software as opposed to its use of Apple Software.

breach of the end-user license agreement ("EULA"), which is an agreement between the developer and the end-user, not between the developer and Apple.[2] Ex. A § 10(iii); *see also id*., Schedule 1, § 3.3. Section 10 also prohibits app developers from "enter[ing] into any settlement agreement with a third party that affects Apple's rights or binds Apple in any way," which also suggests that this is a third-party indemnity provision. *Id*. § 10. Finally, Section 10 contains no express references to intra-party disputes or prevailing parties.

Apple's argument that the indemnification provision applies to actions between the parties is strongest with regard to Section 10(i), which requires indemnification for "breach of any certification, covenant, obligation, representation or warranty in this Agreement…" *Id*. §10(i). But even if Section 10(i) could be read to encompass claims between the parties, it does not change the Court's conclusion. Apple's counterclaim is based on Section 10(vi); Apple does not allege that AliveCor breached any certification, covenant, obligation, representation or warranty. That Section 10(i) might possibly cover intra-party disputes does not mean that Section 10(vi), the applicable provision here, does. Indeed, as discussed above, the express language of the indemnification provision and examination of the other subdivisions strongly suggests that Section 10(vi) covers only third-party claims.

Apple does not dispute that the terms "indemnify" and "hold harmless" create a presumption that an indemnification provision is limited to third-party claims, but it argues that the express language of a contract can overcome this presumption. This may be true, but Section 10 lacks such express language. This distinguishes the present case from those which Apple cites.

For example, in *Dream Theater, Inc. v. Dream Theater*, the indemnification provision expressly stated that the obligation to indemnify applied "against all losses 'whether or not arising out of third party [c]laims.'" 124 Cal. App. 4th 547, 556 (2004). Similarly, in *Zalkind v. Ceradyne, Inc.*, the agreement contained broad language requiring one party to indemnify the

---

[2] Apple argues that Section 10(iii) has "no plausible reading" other than to encompass one party's breach of an obligation to the other. (Opp'n at 10.) The EULA is an agreement between the app developer and the end-user. Thus, the language of Section 10(iii) seems to contemplate situations where the developer breaches its obligations to the end-user under the EULA and the end-user sues Apple. Apple provides no explanation how this provision could be read to cover intra-party disputes.

5

other for losses "'whether or not they have arisen from or were incurred in or as a result of any demand, claim, action, suit, assessment or other proceedings or any settlement or judgment…'" 194 Cal. App. 4th 1010, 1028 (2004). In *Wilshire-Doheny Assocs. Ltd. v. Shapiro*, the court found the indemnification provisions applied to disputes between the parties on the contract because there was "nothing in the language of any of the three indemnity provisions specifically limiting their application to third party lawsuits." 83 Cal. App. 4th 1380, 1396-97 (2000).

In contrast, Section 10 does not contain express language expanding its scope beyond third-party claims. And unlike the provision in *Wilshire-Doheny*, Section 10 does contain language that limits it to third-party claims, as discussed *supra*. Moreover, the indemnification provisions in Apple's cited cases were found to cover disputes between the parties for breach of contract or enforcement of the indemnification agreements. But, as discussed above, Apple's counterclaim is not for breach of contract. Apple's cases are distinguishable.

The recent decision in *Epic Games, Inc. v. Apple Inc.* further supports the Court's conclusion about Section 10. 559 F. Supp. 3d 898 (N.D. Cal. 2021). In *Epic*, Apple asserted a similar counterclaim for indemnification under Section 10 of the License Agreement. *Id*. at 1066. The court, guided by the same principles applied here, rejected Apple's argument and determined that Section 10 applied only to suits between Apple and third parties. *Id*. at 1066-67. The Court agrees with the reasoning in *Epic*.[3]

Section 10 contains key indicators suggesting it applies only to claims asserted by third parties and is devoid of any unambiguous reference to intra-party disputes. Accordingly, the Court GRANTS AliveCor's motion to dismiss the counterclaim. Because the Court dismisses the counterclaim based on the language of the indemnification provision, the Court need not address AliveCor's other arguments related to fee-shifting in antitrust cases.

//

//

---

[3] The parties in the *Epic* case have appealed the trial court's judgment. *See Epic Games, Inc. v. Apple Inc.*, Nos. 21-165506, 21-16695 (9th Cir. Mar. 24, 2022). On appeal, Apple has challenged the judgment with regard to Section 10. Apple and AliveCor disagree over the scope of Apple's challenge, but the parties' arguments on that issue did not factor into the Court's decision here.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS AliveCor's motion to dismiss the counterclaim for indemnification. Because the Court finds Section 10(vi) applies to third party claims as a matter of law, it concludes amendment would be futile and dismisses the counterclaim without leave to amend.

**IT IS SO ORDERED.**

Dated: May 16, 2022

_____
JEFFREY S. WHITE
United States District Judge