QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Adam Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
Andrew M. Holmes (Bar No. 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for AliveCor, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AliveCor, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Apple Inc., <br><br> Defendant. | CASE NO. 4:21-cv-03958-JSW <br><br> **PLAINTIFF ALIVECOR, INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION DUE TO APPLE'S SPOLIATION OF MYOUNG CHA'S ESI** <br><br> Date: April 28, 2023 <br> Time: 9:00 am <br> Place: Courtroom 5, 2nd Floor <br><br> The Honorable Jeffrey S. White |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 28, 2023, or soon thereafter as this matter can be heard before the Honorable Judge Jeffrey S. White in Courtroom 5, Second Floor, United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiff AliveCor, Inc. ("AliveCor") shall and hereby does move the Court under Federal Rules of Civil Procedure 51 and 37(e)(2) to issue an adverse inference jury instruction against Defendant Apple Inc. ("Apple") for its spoliation of evidence.

Specifically, AliveCor requests that the Court instruct the jury as follows at the trial in this matter:

> After AliveCor initiated this lawsuit, Apple permanently deleted the electronic files from its former Director of Health Strategy, Myoung Cha. I, in my role as the Judge overseeing this matter, have found that the deletion was intentional. You should therefore presume that the Myoung Cha files Apple deleted, including his emails and other materials, supported AliveCor's case in this lawsuit.

████████████

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Apple intentionally spoliated electronically-stored information from its former Director of Health Strategy, Myoung Cha, and, as an appropriate sanction for Apple's spoliation, whether the Court should provide an adverse instruction to the jury regarding the Cha materials.

2.      If the Court does not conclude the evidence demonstrates Apple intentionally spoliated Mr. Cha's files, whether the Court should issue an instruction to the jury (consistent with CACI 204) that they should determine whether the destruction was intentional and whether the spoliated evidence was unfavorable to Apple.

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................1

II.     STATEMENT OF FACTS ....................................................................2

    A.      The Parties' Litigation History ...............................................2

    B.      Who Is Myoung Cha And Why Is His ESI So Central To This Case? ....................2

    C.      Apple Repeatedly Hid Mr. Cha And Its Spoliation From AliveCor ......................4

III.    THE LAW ON ESI SPOLIATION SANCTIONS ................................................5

IV.     ARGUMENT ............................................................................6

    A.      Apple Violated Its Duty To Preserve Mr. Cha's ESI ......................................6

        1.      Apple's duty to preserve first arose in December 2020 and was reinforced in April and May 2021 ..........................6

        2.      Mr. Cha was clearly a custodian who likely had discoverable information regarding AliveCor's allegations ..............................7

        3.      Apple failed to take any reasonable steps to preserve Mr. Cha's ESI ...........8

        4.      Despite its duty to preserve, Apple permanently destroyed Mr. Cha's ESI, which is information AliveCor cannot obtain from other sources ..............................9

    B.      Apple Intentionally Failed To Preserve Mr. Cha's Materials, Warranting Sanctions Under Rule 37(e)(2) ..................................................9

        1.      The few Cha documents AliveCor received are incredibly damning ...........9

        2.      Within Apple, Mr. Cha's role and employee relationships made him one of, if not *the*, most obvious document custodians to the company ........10

        3.      Mr. Cha is the only obviously relevant custodian whose files went missing after AliveCor filed suit ..............................10

        4.      Apple failed to even try to preserve Mr. Cha's ESI ...............................10

        5.      Apple is an ultra-sophisticated litigant that well knows how to identify and preserve likely discoverable information ...............................10

        6.      Apple tried to hide its spoliation from both the Court and AliveCor ...........11

    C.      The Appropriate Sanction For Apple's Intentional Spoliation Is An Adverse Inference Jury Instruction ..................................................11

    D.      At The Very Least, Apple's Evidence Destruction Prejudiced AliveCor, Warranting Sanctions In The Alternative Under Rule 37(e)(1) ...............................12

E.   AliveCor's Motion Is Timely ...................................................................13

    1.   Requests under Rule 51 may be made up to and through the close of evidence at trial ............................................................................13

    2.   Local Rule 7-8 requires sanctions motions "as soon as practicable" after learning key facts ..................................................................13

    3.   Local Rule 37-3's "seven day" requirement does not apply here and, even if it did, Apple's bad faith warrants permitting this limited motion ...........................................................................................14

V.   CONCLUSION ...........................................................................................15

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

██████████

## TABLE OF AUTHORITIES

## CASES

*Adobe Sys. Inc. v. Software Tech*,
2015 WL 4940899 (N.D. Cal. Aug. 19, 2015) ................................................................. 14

*Akiona v. United States*,
938 F.2d 158 (9th Cir. 1991) ......................................................................................... 11, 12

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................... 6, 10, 11, 13, 15

*Apple Inc. v. Samsung Elecs. Co.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012)……………………………………………………6

*Kannan v. Apple Inc.*,
2020 WL 9048723 (N.D. Cal. Sep. 21, 2020) .................................................................. 14

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007) .......................................................................................... 14

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ........................................................ 5, 6, 13

*Estate of Bosco ex rel. Kozar v. County of Sonoma*,
2022 WL 16927796 (N.D. Cal. Nov. 14, 2022) ...................................................... 9, 10, 12

*Facebook, Inc. v. OnlineNIC Inc.*,
2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ........................................................... 11, 15

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
897 F. Supp. 2d 939 (N.D. Cal. 2012) ............................................................................... 5

*Illumina, Inc. v. BGI Genomics Co.*,
2021 WL 4305975 (N.D. Cal. Sept. 22, 2021) .................................................................. 15

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) ..................................................................... 15

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................................... 6, 7, 8

*Io Group Inc. v. GLBT Ltd.*,
2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ..................................................................... 6

*Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*,
2014 WL 595912 (N.D. Cal. Feb. 14, 2014) ..................................................................... 11

*John v. County of Lake*,
2020 WL 3630391 (N.D. Cal. July 3, 2020) ....................................................................... 5

*Knickerbocker v. Corinthian Colls.*,
298 F.R.D. 670 (W.D. Wash. 2014) ........................................................................ 8, 9, 10

**TABLE OF AUTHORITIES**

*Montoya v. Orange Cnty Sheriff Dept.*,
   2013 WL 6705992 (C.D. Cal. Dec. 18, 2013) ................................................................14

*Okada v. Whitehead*,
   2016 WL 9448484 (C.D. Cal. June 13, 2016)…………………………………………...7

*Phan v. Costco Wholesale Corp.*,
   2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) .................................................................. 6

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
   342 F.R.D. 461 (C.D. Cal. 2022) ....................................................................... 4, 11, 12

*Scalia v. Cnty. of Kern*,
   576 F. Supp. 3d 703 (E.D. Cal. 2021) ........................................................................... 14

*Skyline Advanced Tech. Servs. v. Shafer*,
   2020 WL 13093877 (N.D. Cal. July 14, 2020) ................................................................ 15

## RULES AND REGULATIONS

Fed. R. Civ. P. 37(e)(2) ............................................................................................. 5, 6, 11

Fed. R. Civ. P. 51(a) ...................................................................................................... 13

Local Rule 7-8 ................................................................................................................ 13

Local Rule 7–8(c) .......................................................................................................... 13

Local Rule 37-3 .............................................................................................................. 14

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION
DUE TO APPLE'S SPOLIATION OF MYOUNG CHA'S ESI**

## I.      PRELIMINARY STATEMENT

Myoung Cha was a high-level strategist at Apple tasked with identifying Apple's best opportunities in the health space and how to monetize them for the company. From even the limited documents of his that AliveCor received, it is clear he was well-known to and regularly corresponded with the two employees Apple identified in its Rule 26(a)(1) disclosures as the ones it intends to use for its defense (Stephen Waydo and Deidre Caldbeck), as well as multiple others who are central to this antitrust case—among them, Jeff Williams, who oversaw Apple Watch development at all times and is now Apple's COO.

In short, in this antitrust lawsuit regarding heart rhythm analysis apps on the Apple Watch, even the limited Cha documents that Apple produced are among the hottest and most important pieces of evidence in the case. From the moment litigation arose between AliveCor and Apple, Apple clearly knew Mr. Cha was an incredibly important custodian.

But Apple did not preserve Mr. Cha's files and instead (in Apple's own words) purged them in June 2021, shortly after he left the company—and, indeed, did not even issue a litigation hold notice to *anyone* within the company until at least August 2021. This is despite that: AliveCor filed a patent infringement lawsuit in December 2020 regarding technology whose value Mr. Cha discussed on a regular basis; AliveCor initiated an ITC investigation in April 2021 that explicitly alleged (in the context of a discussion about the public interest) Apple anticompetitively eliminated competition for heart rhythm analysis apps; and AliveCor filed *this* lawsuit alleging antitrust claims expanding on those allegations in May 2021. Worse, Apple tried to hide its spoliation from both this Court and AliveCor—first, by trying to prevent AliveCor from taking discovery of Mr. Cha's files after AliveCor discovered his relevance; and, second, by dripping out information about the spoliation until the very end of fact discovery. AliveCor finally learned the truth on February 24, 2023, in a Rule 30(b)(6) deposition where Apple had to finally admit its misconduct.

Given the seriousness of this evidence destruction, the circumstances surrounding it, Mr.

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

Cha's centrality to the case, and the obvious prejudice AliveCor will suffer, AliveCor seeks an appropriate sanction. In that vein, AliveCor requests that the Court issue an adverse inference instruction, telling the jury they should (or, in the alternative, may) infer that the Cha documents Apple inappropriately destroyed support AliveCor's case.

## II.   STATEMENT OF FACTS

### A.   The Parties' Litigation History

Apple's malicious "copy, then kill" strategy against AliveCor spurred a series of related lawsuits. On December 7, 2020, AliveCor filed a patent infringement suit against Apple. *See generally* Declaration of Adam Wolfson ("Decl."), Ex. A.[1] That lawsuit alleged patent infringement relating to Apple's inclusion of ECG and hearth rhythm analysis technology on the Apple Watch, and sought damages. *See generally id.* AliveCor also sought increased damages and attorney's fees for willful infringement based on copying, necessarily implicating Apple's knowledge of AliveCor and its ECG and heart rhythm analysis technology, and how it valued such technology. *See id.* at 14, 21, 29, 30.

In April 2021, AliveCor initiated an investigation at the International Trade Commission ("ITC") alleging infringement of the same patents and specifically also alleging, *inter alia*, that (1) Apple was aware of and copied AliveCor's technology, and (2) Apple unfairly eliminated competition via software changes from watchOS4 to watchOS5. Ex. B. Shortly thereafter, AliveCor filed this antitrust case on May 25, 2021, expanding on the copying and anticompetition allegations in its ITC complaint. *See generally* Dkt. 1 (Compl.).

AliveCor's Complaint in this case detailed how Apple was well-aware of AliveCor and other competitors offering similar apps in the relevant market. *See, e.g.*, Compl. ¶¶ 3-7. It also alleged that Apple's anticompetitive behavior was motivated by its recognition that the data generated by and underlying heart rhythm analysis apps was extremely valuable, and likewise alleged that Apple intentionally excluded it from the market to own and retain that valuable data. Compl. ¶¶ 4, 27.

### B.   Who Is Myoung Cha And Why Is His ESI So Central To This Case?

---

[1]  "Ex." citations in this brief refer to exhibits to the Wolfson Decl.



1   Mr. Cha was Apple's Director of Health Strategy.

███████████████

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████. The heart of AliveCor's case—Apple's anticompetitive conduct and

5 motivation—leaps from the page when one reads Mr. Cha's words.

   **C.      Apple Repeatedly Hid Mr. Cha And Its Spoliation From AliveCor**

7 Despite three separate AliveCor lawsuits directly implicating the evidence from his files,

8 ████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████

10 ████████ Nevertheless, on August 24, 2021, Apple certified it had reviewed this Court's ESI

11 guidelines[3] and conferred in good faith with AliveCor regarding "steps to preserve evidence relevant

12 to the issues reasonably evident in this action." Dkt. 29 at 5. At no time during those early

13 conferences did Apple disclose it had recently purged the files of its highest-level business strategist

14 on ECG and heart rhythm analysis technology. Had Apple come clean at that time, the parties and

15 Court could have addressed that spoliation's effect on discovery at the beginning of the case—and

16 it would have been the honest thing for Apple to do. But that is not how Apple operated in this case.

17 On March 18, 2022, Apple certified in the parties' ESI Protocol that it had "a continuing obligation

18 to take reasonable and proportionate steps to identify sources of relevant documents…" Dkt. 41 at

19 2. Yet Apple never affirmatively identified Mr. Cha as someone within the company who would

20 have (or, at least, should have) likely discoverable files.

21 AliveCor discovered Mr. Cha's relevance in late October 2022 after reviewing Apple's first

22 productions, because Apple produced some of his emails from *other* custodians' files. AliveCor

23 promptly requested Apple add Mr. Cha as a document custodian, which Apple refused. Ex. C

24

25 ────────────────

[3]   The Court's ESI Guidelines required Apple to discuss what ESI would be preserved from

26 sources that were not reasonably accessible, 2.01(e), and to discuss "the source, scope and type of ESI that has been and will be preserved" and "any difficulties related to preservation," 2.02.

27 Northern District's Guidelines for the Discovery of Electronically Stored Information, effective December 1, 2015 ("Guidelines"); *see also RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D.

28 461, 505 (C.D. Cal. 2022) (noting parties' obligations under this Court's ESI Guidelines).

1    AliveCor then noticed the dispute for resolution with Magistrate Judge Kim. Ex. D. After reviewing

2    AliveCor's exhibits and argument, Magistrate Judge Kim agreed Mr. Cha was relevant and

3    permitted AliveCor to add him as a custodian. Dkt. 129. AliveCor immediately began work on the

4    search terms to be applied to Mr. Cha's files, but Apple was slow to confirm the terms (15 days),

5    and even slower to produce documents; it agreed to search terms on January 10, 2023, and then

6    produced just 40 documents on January 31, 2023, and 5 more on February 8, 2023. Exs. E, F; Decl.

7    ¶¶ 6, 7. At no time throughout this entire process did Apple disclose that it had none of Mr. Cha's

8    custodial server site data, including emails. Instead, it remained silent until AliveCor requested

9    information about the alarmingly small number of Cha custodial files. Even then, Apple continued

10   to hide the ball, refusing to answer basic questions. Ex. G. It was not until February 24, 2023, when

11   Apple was under oath at a Rule 30(b)(6) records custodian deposition AliveCor originally requested

12   in November 2022, that Apple admitted— for the first time—it permanently destroyed Mr. Cha's

13   server-site data ████████████████████████████████████████

14   This motion followed.

15   **III.    THE LAW ON ESI SPOLIATION SANCTIONS**

16         A party spoliates evidence when it "destroys or materially alters evidence or fails to preserve

17   property for another's use as evidence in pending or reasonably foreseeable litigation." *Hynix*

18   *Semiconductor Inc. v. Rambus, Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012). Under Rule 37(e),

19   spoliation occurs when: "(1) the ESI 'should have been preserved in the anticipation or conduct of

20   litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) '[the

21   ESI] cannot be restored or replaced through additional discovery.'" *John v. County of Lake*, 2020 WL

22   3630391, at *5 (N.D. Cal. July 3, 2020) (Kim, M.J.). Upon finding spoliation, the Court has latitude to

23   sanction the offending party, depending on the character of and intent behind its behavior. *See id.*

24         Where a spoliating party acts in bad faith, and it is reasonable to infer intent to spoliate, the Court

25   proceeds under Rule 37(e)(2), which allows it to issue any of the following sanctions: (1) a presumption

26   "that the lost information was unfavorable to the party"; (2) a jury instruction "that it may or must

27   presume the information was unfavorable to the party"; or (3) a dismissal or default judgment. *Dish*

28   *Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL 11270394, at *2 (N.D. Cal. Oct. 19, 2022) (quoting Fed. R.

Civ. P. 37(e)(2)). If the Court chooses to impose an adverse inference sanction, there are three options available, in descending order of their punitive nature: "(1) an instruction 'that certain facts are deemed admitted and must be accepted as true'; (2) 'a mandatory presumption'; [or] (3) an instruction that 'permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party.'" *Id.* at *3 (N.D. Cal. Oct. 19, 2022) (citing and quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) ("*Apple I*")).

Although adverse inference instructions are available as a sanction under Rule 37(e), *id.* at *2, they actually issue under Rule 51. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 995 (N.D. Cal. 2012) ("*Apple II*"). Such instructions, whether mandatory (*i.e.*, the jurors *must* infer spoliated documents supported the opponent's case) or permissive (*i.e.*, they *may* apply such an inference), as noted above, are appropriate when the evidence affirmatively shows—or allows one to reasonably infer—that the spoliating party intentionally destroyed the evidence. *Dish*, 2022 WL 11270394, at *2-*3. Nonetheless, if the movant cannot establish intent, but still shows the spoliating party was negligent in maintaining potentially relevant evidence, then the Court may instead instruct the jury—consistent with, *e.g.*, California's CACI 204—to determine whether the destruction was intentional and whether the spoliated evidence was unfavorable to the defendant. *Id.* at *3 (discussing *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020)).

## IV.   ARGUMENT

### A.   Apple Violated Its Duty To Preserve Mr. Cha's ESI

#### 1.   Apple's duty to preserve first arose in December 2020 and was reinforced in April and May 2021

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). The duty to preserve extends to information a party knows, "or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, [or] is reasonably likely to be requested during discovery." *Io Group Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *5 (N.D. Cal. Oct. 19, 2011). After the duty arises, a party must "suspend any existing policies related to deleting or destroying files and preserve

all relevant documents related to the litigation." *Napster*, 462 F. Supp. 2d at 1070.

Here, Apple's duty to preserve Mr. Cha's files began on December 7, 2020, when AliveCor filed its first patent infringement lawsuit. AliveCor's claims there involve Apple's development and use of ECG and heart rhythm analysis functionality on the Apple Watch, as well as Apple's awareness of AliveCor, its innovations, and the value of ECG and heart rhythm analysis technology. *See supra* at 2. Similarly, AliveCor's ITC lawsuit, filed April 20, 2021, *id.*, and this one, filed May 25, 2021, Dkt. 1., each alleged that Apple specifically knew about and monitored both it and other competitors, and specifically sought to exclude them because Apple determined there was massive value to controlling and utilizing the data such heart rhythm analysis apps provide.

Given these allegations, as of December 2020, Apple had a clear duty to preserve evidence regarding the development and value of the technologies underlying its ECG and heart rhythm analysis apps—subjects on which Myoung Cha was heavily involved as Director of Health Strategy. *See Okada v. Whitehead*, 2016 WL 9448484, at *2 (C.D. Cal. June 13, 2016), *R&R adopted*, 2016 WL 11680717 (C.D. Cal. July 8, 2016) (duty to preserve for subsequent arose from similar claims and issues relevant to earlier case). But, as of April 20, 2021 and then May 25, 2021, it could not have been clearer that Apple needed to preserve, *inter alia*, any and all evidence in which it discussed AliveCor or Cardiogram, competition between Apple and those companies, Apple's views on the value of heart rhythm analysis apps, and its motivations for acting in the way it did with respect to heart rhythm analysis apps on the Apple Watch including from Mr. Cha's files.

### 2. Mr. Cha was clearly a custodian who likely had discoverable information regarding AliveCor's allegations

As the Director of Health Strategy, Mr. Cha identified potential health-related business opportunities and strategized how best to monetize them for Apple. *See supra* at 3. In its initial disclosures, Apple disclosed only employees Stephen Waydo and Deidre Caldbeck for its defense, *see* Ex. AA, and █████████████████████████████████████████████████ ████████████████████████████████████████████████████████

But Mr. Cha also appears to have regularly corresponded with numerous other key figures in this lawsuit, ████████████████████████████████████████████████████████

███████████████████

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ███. And the substance of the few Cha materials AliveCor has received are incredibly damning—

6 they are, without exaggeration, some of the most important and hottest documents supporting

7 AliveCor's allegations. *See supra* at 3 (summarizing and quoting same).

8      In short, even a cursory review of the record and Apple's initial disclosures makes clear that

9 any reasonable litigant should have known Mr. Cha's files were highly likely to contain discoverable

10 information, a point with which Magistrate Judge Kim (over Apple's objection) agreed by allowing

11 him as a document custodian late in the case. *See* Dkt. 129.

12              **3.     Apple failed to take any reasonable steps to preserve Mr. Cha's ESI**

13      Once the duty to preserve arises, a party must "suspend any existing policies related to

14 deleting or destroying files and preserve all relevant documents related to the litigation." *Napster*,

15 462 F. Supp. 2d at 1070. The obligation to suspend automatic deletion processes extends to former

16 employees whose ESI is still available as of the triggering date. *Knickerbocker v. Corinthian Colls.*,

17 298 F.R.D. 670, 679 (W.D. Wash. 2014) (finding willful spoliation when party failed to suspend

18 auto-delete policy for ex-employee terminated pre-suit, whose files were still available after duty to

19 preserve arose).

20      As noted, ███████████████████████████████

21 ████████████████████████████████████████

22 ████████████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

1    But that is not the end of Apple's failures to take any reasonable steps to maintain Mr. Cha's

2    ESI. ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████

### 4. Despite its duty to preserve, Apple permanently destroyed Mr. Cha's ESI, which is information AliveCor cannot obtain from other sources

7    ████████████████████████████████████ And, as discovery has since borne out, Mr.

8    Cha's materials are not duplicative of other custodians' documents. Apple only produced *45* of Mr.

9    Cha's custodial documents, compared to thousands from other employees. Decl. ¶ 9. The limited

10   Cha documents AliveCor received from *other* custodians' files are particularly noteworthy due to

11   their contents, but AliveCor was unable to review his additional files, such as memoranda he wrote

12   to file, emails he sent to others within the company, emails he exchanged with market participants,

13   or even just emails he wrote to himself as reminders for later. █████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ██████████████████████████████████████████

### B. Apple Intentionally Failed To Preserve Mr. Cha's Materials, Warranting Sanctions Under Rule 37(e)(2)

19   Because courts cannot "ascertain precisely what was in [a party's] head at the time spoliation

20   occurred, they must look to circumstantial evidence to determine intent." *Estate of Bosco ex rel.*

21   *Kozar v. County of Sonoma*, 2022 WL 16927796, at *9 (N.D. Cal. Nov. 14, 2022). "Intent may be

22   inferred if a party is on notice that documents were potentially relevant and fails to take measures

23   to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *Id.*

24   Here, the evidence is overwhelming that Apple intentionally destroyed Mr. Cha's files, which it did

25   to deprive AliveCor of documents from the most obviously guilty mind in this antitrust case.

### 1. The few Cha documents AliveCor received are incredibly damning

27   In an antitrust case alleging that Apple monitored, copied, and then eliminated AliveCor and

28   other competitors from the market due to its desire to own heart rhythm analysis on the Apple Watch,

1   even the limited emails AliveCor received from Mr. Cha strongly—strongly—support its allegations

2   and clearly undercut Apple's planned defenses. *See supra* at 3.

### 2. Within Apple, Mr. Cha's role and employee relationships made him one of, if not *the*, most obvious document custodians to the company

4   Before engaging in fact discovery with Apple, AliveCor could not have known how clearly

5   Mr. Cha's files would support its case. Although AliveCor had some interactions with Mr. Cha, they

6   were not extensive, and Apple further did not disclose him either pursuant to Rule 26(a)(1) or in any

7   of the parties' early discussions about potentially relevant ESI custodians. However, as noted, Apple

8   *did* disclose Stephen Waydo and Deidre Caldbeck, both of whom clearly knew and regularly

9   interacted with Mr. Cha, *including about AliveCor itself*. *See supra* at 3. ████████████

10  ███████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████ Given these facts, any reasonable investigation within Apple

12  would have (and, AliveCor suspects, did) reveal Mr. Cha's centrality to this case.

### 3. Mr. Cha is the only obviously relevant custodian whose files went missing after AliveCor filed suit

15  Apple produced just *45* documents from Mr. Cha's files, whereas it produced thousands of

16  documents from *each* of the other document custodians it searched in this case, including Jeff

17  Williams, its current COO. Decl. ¶ 9. This sort of statistical evidence strongly supports the inference

18  that Apple intentionally spoliated evidence from such a key witness. *See*, *e.g.*, *Apple II*, 888 F. Supp.

19  2d at 999 (relying on "[t]his same type of statistical analysis" from Apple "to support [the Magistrate

20  Judge's] finding that Samsung spoliated evidence.").

### 4. Apple failed to even try to preserve Mr. Cha's ESI

22  As noted above, Apple wholly failed to implement a single reasonable step to maintain Mr.

23  Cha's ESI. That demonstrates a conscious disregard of Apple's preservation obligations and

24  strongly supports a finding of intent to spoliate. *See id.* at 997-98; *see also Knickerbocker*, 298

25  F.R.D. at 678 (finding bad faith from unreasonable preservation efforts).

### 5. Apple is an ultra-sophisticated litigant that well knows how to identify and preserve likely discoverable information

28  Apple is a "technologically sophisticated part[y] that, by now, should be well-acquainted

-10-

1   with [its] preservation obligations under Rule 37(e). [] There is simply no excuse for [its] failure to
2   preserve ESI." *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *7 (N.D. Cal. Mar. 28,
3   2022); *see also* Fed. R. Civ. P. 37(e)(2), Advisory Committee Notes (noting "the party's
4   sophistication with regard to litigation" is relevant in evaluating preservation efforts).

5      Apple itself agrees that sophisticated parties should know better, and that an obvious failure
6   to preserve by a sophisticated party strongly indicates an intent to spoliate. It successfully argued
7   exactly that point in a similar motion against Samsung. *See Apple I*, 881 F. Supp. 2d at 1146-47.

8                    **6.      Apple tried to hide its spoliation from both the Court and AliveCor**

9      If a party tries to hide spoliation from the Court and its opponent, that is also strong evidence
10  of intent. *See, e.g., Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 595912, at *5-*6
11  (N.D. Cal. Feb. 14, 2014) ("Defendants' failure to promptly reveal the destruction, as well as their
12  apparent efforts to cover it up" strongly indicated bad faith); *see also RG Abrams Ins.*, 342 F.R.D.
13  at 509 (similar). Here, that is exactly what happened, as detailed extensively above. *See supra* at 4-
14  5. Apple's serial obfuscation that it irretrievably destroyed Mr. Cha's ESI ███████████ thus
15  strongly evinces its intent to destroy those materials. *Id.*

16                              *    *    *    *    *

17     Any one of the above facts would alone strongly support the inference that Apple
18  intentionally destroyed Mr. Cha's files; together, they leave no other conclusion. Apple did not act
19  as innocent parties do; it acted as one who would abuse the discovery process for personal gain.

20  **C.      The Appropriate Sanction For Apple's Intentional Spoliation Is An Adverse
             Inference Jury Instruction**

21
22     Given the facts demonstrating Apple's intent to destroy documents from one of its most
23  relevant and important document custodians in the case, AliveCor respectfully submits that the
24  appropriate sanction is a "mandatory presumption" adverse inference instruction, telling the jury
25  they must presume the destroyed Cha materials support AliveCor's case. Doing so will strongly
26  support both of the adverse inference's rationales, the first of which is the "common sense
27  observation" that a party who destroys materials relevant to litigation indicates that party "is more
28  likely to have been threatened by the document than is a party in the same position who does not

destroy the document." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). But, just as important is the second rationale, which is the adverse inference's "prophylactic and punitive effects," in that it "presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Id.* Here, where Apple has been sanctioned before in courts within this very District for this very same type of conduct, yet *still* tried to hide its most recent spoliation from the Court, a mandatory presumption adverse inference instruction will accomplish both of these goals.

If the Court, however, declines to issue a mandatory instruction, then an instruction permitting the jury to presume the lost evidence is both relevant and favorable to AliveCor is the next best sanction available (although does not reflect Apple's knowledge about how relevant and damaging Mr. Cha's documents are, and does not go as far to dissuade Apple's serial spoliation).

### D. At The Very Least, Apple's Evidence Destruction Prejudiced AliveCor, Warranting Sanctions In The Alternative Under Rule 37(e)(1)

Regardless of Apple's intent, if the Court finds the destruction prejudiced AliveCor, then it may order sanctions under Rule 37(e)(1) sufficient to cure that prejudice. *Est. of Bosco*, 2022 WL 16927796, at *6, *8-*9 (discussing Rule 37(e)(1), and finding Rule 37(e)(1) sanctions appropriate due to movant's prejudice from evidence destruction). "Prejudice exists where 'the [spoiling party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *RG Abrams Ins.*, 342 F.R.D. at 507. Since proving the relevance of lost evidence can be a difficult task, the movant need only "come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Id.*.

AliveCor easily meets this standard. As discussed above, even the limited number of Cha emails AliveCor received via other custodians are among the hottest in the case, and it was literally Cha's job to lead health strategy for Apple, in which capacity he discussed AliveCor and why it benefited Apple to eliminate competition for watchOS heart rhythm analysis apps. *See supra* at 3.

Given these facts, as well as that AliveCor cannot replicate Mr. Cha's files from other custodians' accounts or via his deposition testimony, AliveCor's prejudice is clear. Accordingly, sanctions under Rule 37(e)(1) are appropriate. Along those lines, AliveCor submits that the Court should instruct the jury—consistent with, *e.g.*, California's CACI 204—to determine whether the

destruction was intentional and whether the spoliated evidence was unfavorable to the defendant. *Dish Network*, 2022 WL 11270394, at *3.[4]

### E.    AliveCor's Motion Is Timely

A final point bearing mention is that, in the meet and confers leading to this motion, Apple argued the motion would be untimely because the parties agreed and the Court ordered that "discovery-related motions" should be complete by the close of fact discovery, *see* Dkt. 55, at 11; Dkt. 58 at 1, and because AliveCor knew of Mr. Cha as a document custodian by November 2022. Neither of these arguments—which speak more to Apple's desperation—pass muster.

#### 1.    Requests under Rule 51 may be made up to and through the close of evidence at trial

As an initial matter, although AliveCor's mechanism for bringing this motion is Rule 37, the actual request it makes is for a jury instruction under Rule 51. That Rule allows a litigant to seek a specific jury instruction any time before the close of evidence *at trial*. *See* Fed. R. Civ. P. 51(a). And Apple well knows this, as it was told the exact same thing previously, when it tried to make untimeliness arguments in response to a highly similar sanctions motion and the Court instead issued an adverse inference instruction. *See Apple II*, 888 F. Supp. 2d at 995-96 (rejecting untimeliness arguments and issuing adverse inference instruction against Apple based on spoliation). The same result holds here, as does the timeliness of AliveCor's motion under Rule 51.

#### 2.    Local Rule 7-8 requires sanctions motions "as soon as practicable" after learning key facts

Similarly, the Civil Local Rules time this type of motion to when the movant learns the relevant facts; not when certain deadlines occurred. Specifically, Civil Local Rule 7–8(c) requires a sanctions motion "as soon as practicable" after the movant learns the facts that give rise to it. This can include learning facts well after fact discovery, in the lead-up to trial. *See Apple II*, 888 F. Supp. 2d at 996 (granting adverse inference instruction against Apple in final days of pretrial proceedings).

---

[4]  CACI 204, as tailored to this case, states: You may consider whether [Apple] intentionally concealed or destroyed evidence. If you decide that [Apple] did so, you may decide that the evidence would have been unfavorable to [Apple]. See CACI No. 204. Willful Suppression of Evidence, available at https://www.justia.com/trials-litigation/docs/caci/200/204/ (last visited Mar. 15, 2023).

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

As noted above, AliveCor moved for sanctions with all due haste once it finally learned the facts indicating Apple spoliated Mr. Cha's ESI; *i.e.*, on February 24, 2023. More specifically, this motion follows just three weeks later (while AliveCor is in the midst of preparing its opening expert reports, and shortly after its lead lawyer in this case welcomed a new baby to his family). That is clearly "as soon as practicable" under LR 7-8(c). *See Scalia v. Cnty. of Kern*, 576 F. Supp. 3d 703, 706 (E.D. Cal. 2021) (spoliation motion timely where movant learned the key facts underlying the motion via deposition just six weeks before moving, even despite knowing of the potential issue for several months); *see also Adobe Sys. Inc. v. Software Tech*, 2015 WL 4940899, at *3 (N.D. Cal. Aug. 19, 2015) (timely when filed less than one month after receiving relevant discovery responses).

### 3. Local Rule 37-3's "seven day" requirement does not apply here and, even if it did, Apple's bad faith warrants permitting this limited motion

Finally, to the extent Apple argues that "discovery-related motions" in the parties' agreed schedule includes spoliation motions—which AliveCor expects it will do based on the commentary to Local Rule 37-3 (defining "discovery-related motions," as used in that Local Rule)—that argument is incorrect as a legal matter, and one that Apple argued the exact opposite way when it benefited Apple. *See Kannan v. Apple Inc.*, 2020 WL 9048723, at *6 (N.D. Cal. Sep. 21, 2020) (finding Apple's sanctions motion, filed eight months after close of fact discovery, timely because LR 37-4 (governing Rule 37 sanctions motions), in contrast to LR 37-3, does not set a deadline).

In any event, even if the Court applies that interpretation to the parties' own term, good cause exists to allow this motion now. First, declining to hear the merits of AliveCor's motion neither upholds "the integrity of the discovery process," nor ensures that Apple's discovery behavior does not "interfere with the rightful decision of the case." *Montoya v. Orange Cnty Sheriff Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013) (quoting *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)) (permitting untimely motion since the Court has a strong countervailing interest in ensuring discovery integrity). Second, LR 37-3 notes parties "should initiate discovery requests and notice depositions sufficiently in advance of the cut-off date to comply with this local rule." AliveCor served the discovery requests underlying Mr. Cha's production obligations in August 2021; *i.e.*, a *year-and-a-half* before the cutoff date. It then engaged

in nearly a year of frustratingly-evasive meet and confers with Apple regarding Apple's productions, which it finally brought to the Court's attention in a request for a substantial completion production deadline because Apple was trying to run out the clock on fact discovery. *See* Dkt. 74. Once AliveCor identified Mr. Cha as a document custodian and obtained a Court order in December 2022 to add him to fact discovery, Apple once again delayed until early February 2023, when it finally became clear there was a problem. *See supra* at 4-5.

Furthermore, AliveCor noticed the Rule 30(b)(6) deposition in which it finally learned the relevant facts of Apple's spoliation in November 2022. Ex. I. Apple slow-rolled responding to that notice (despite multiple prompts from AliveCor, Exs. J-M), and only agreed to provide its records custodian for deposition on February 24, 2023. Ex. M. Thus, despite AliveCor's best efforts, it was unable to even take a deposition regarding Apple's preservation efforts until the very end of fact discovery; gamesmanship that strongly indicates Apple's bad faith, but unfortunately a tactic that its counsel in this case regularly uses. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, --- F. Supp. 3d ---, 2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) (sanctioning Gibson Dunn).

Given AliveCor's diligence and Apple's obvious bad faith, there is good cause to permit this motion. *See*, *e.g.*, *Skyline Advanced Tech. Servs. v. Shafer*, 2020 WL 13093877, at *7 (N.D. Cal. July 14, 2020). Indeed, it simply cannot be that the Local Rules were designed to encourage parties to trickle out key information about spoliation until the end of fact discovery and then use LR 37-3's timing requirements as a sword. *Illumina, Inc. v. BGI Genomics Co.*, 2021 WL 4305975, at *2 (N.D. Cal. Sept. 22, 2021) ("the deadline to move to compel in Civil Local Rule 37-3 can be equitably tolled when justice so demands for litigants who are otherwise diligent."). And, AliveCor respectfully submits, permitting this motion will dissuade bad faith tactics like Apple's, particularly because another Court within this District has already explained *to Apple* that Rule 51 requests are timely if made before the close of evidence at trial. *Apple II*, 888 F. Supp. 2d at 995-96.

## V.    CONCLUSION

For the foregoing reasons, AliveCor respectfully requests that the Court sanction Apple for its spoliation under Rule 37(e)(2), or, in the alternative, under Rule 37(e)(1).

**PLAINTIFF ALIVECOR INC.'S MOTION FOR AN ADVERSE JURY INSTRUCTION**

▉▉▉▉▉▉

DATED: March 16, 2023              QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  _/s/ Adam B. Wolfson_
Sean Pak
Adam B. Wolfson
Andrew M. Holmes

*Attorneys for Plaintiff AliveCor, Inc.*

-16-