**<u>FILED UNDER SEAL</u>**

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

JASON C. LO (SBN 219030)
  jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
  jrho@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile: 213.229.7520

CAELI A. HIGNEY (SBN 268644)
  CHigney@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
  JKleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393-8200
Facsimile: 415.393-8306

*Attorneys for Defendant Apple, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AliveCor, Inc.,<br><br>            Plaintiff,<br><br>   v.<br><br>Apple, Inc.,<br><br>            Defendant. | CASE NO. 4:21-CV-03958-JSW-SK<br><br>**DEFENDANT APPLE, INC.'S OPPOSITION TO ALIVECOR, INC.'S MOTION FOR ADVERSE JURY INSTRUCTION**<br><br>Date:      April 28, 2023<br>Time:     9:00 a.m.<br>Place:     Courtroom 5, 2nd Floor<br><br>The Honorable Jeffrey S. White |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTS................................................................................................................................. 4

    A.    The Complaint.................................................................................................... 4

    B.    Myoung Cha's Former Role At Apple................................................................ 5

    C.    The Complaint Makes No Allegations of ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ ................................................................................ 5

    D.    Disposition of Mr. Cha's Emails and Subsequent Procedural History ........................ 6

III. ARGUMENT ....................................................................................................................... 8

    A.    Apple Took Reasonable Steps To Fulfill Its Duty To Preserve Documents For This Litigation. ......................................................................................................... 8

    B.    There Was No Intentional Spoliation............................................................... 10

    C.    The Disposition of Mr. Cha's Server Emails Did Not Prejudice AliveCor ................ 12

    D.    AliveCor's Motion is Untimely. ....................................................................... 14

IV. CONCLUSION.................................................................................................................. 15

**FILED UNDER SEAL**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    888 F. Supp. 2d 976 (N.D. Cal. 2012) ...................................................................................14

*Aramark Mgmt., LLC v. Borgquist*,
    2021 WL 864067 (C.D. Cal. Jan. 27, 2021) ...........................................................................11

*Best Label Company v. Custom Label & Decal, LLC*,
    2022 WL 1525301 (N.D. Cal. May 13, 2022) ....................................................................8, 13

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
    2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) .......................................................................11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    2022 WL 18399982 (N.D. Cal. Nov. 4, 2022) ..................................................................11, 12

*Io Group Inc. v. GLBT Ltd.*,
    2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ..........................................................................2

*Nuvasive, Inc. v. Madsen Med., Inc.*,
    2016 WL 305096 (S.D. Cal. Jan. 26, 2016) ............................................................................11

*SEC v. CKB168 Holdings, Ltd.*,
    2016 WL 11796950 (E.D.N.Y. Feb. 2, 2016), *report and recommendation
    adopted*, 2016 WL 11796983 (E.D.N.Y. Sept. 28, 2016) .......................................................11

*SiteLock LLC v. GoDaddy.com LLC*,
    2022 WL 3716499 (D. Ariz. Aug. 29, 2022) ..........................................................................13

*Stemmelin v. Matterport, Inc.*,
    2022 WL 818654 (N.D. Cal. Mar. 17, 2022) ..........................................................................13

*Wisk Aero LLC v. Archer Aviation, Inc.*,
    2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) .........................................................................10

*Zubulake v. UBS Warburg*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ..............................................................................................9

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) ..............................................................................................8

**Rules**

Fed. R. Civ. P. 37(e) ..................................................................................................................8, 11

**FILED UNDER SEAL**

Fed. R. Civ. P. 37(e) advisory committee note (2015) ..................................................................9

Fed. R. Civ. P. 37(e)(1) ..............................................................................................................13

Fed. R. Civ. P. 37(e)(2) ..........................................................................................................3, 10

Fed. R. Civ. P. 51 .......................................................................................................................14

**FILED UNDER SEAL**

# I. INTRODUCTION

AliveCor seeks sanctions over Apple's routine disposition of server-based emails[1] of Myoung Cha, a former Apple employee who left Apple *before* AliveCor's Complaint was filed, and whose emails became unrecoverable in accordance with Apple's normal, automated business practices shortly after AliveCor served its Complaint, before Apple's counsel in this action had any knowledge of him, and nearly a year-and-a-half before AliveCor first sought to make Mr. Cha a custodian.[2] Apple took reasonable steps to identify relevant documents to preserve in this case; did not act with any intent to deprive AliveCor of evidence in this litigation; and AliveCor has not shown it has been prejudiced in any way. The motion is meritless, and must be denied.

**Apple took reasonable steps to preserve relevant documents in this case.**

Mr. Cha's relevance to the Complaint is thin, at best, and it is reasonable that Mr. Cha was not identified as likely to have information relevant to this case. AliveCor initially alleged that Apple acted to monopolize a market for "watchOS heartrate analysis apps" by:

1. making a series of "undocumented updates" to the Watch's software, Dkt. No. 1 ("Compl.") ¶ 5;

2. introducing a "change in watchOS 5 that made it effectively impossible for any third party to provide heartrate analysis" Compl. ¶ 27; and

3. communicating with AliveCor about "unwritten App Store guidelines," Compl. ¶ 4.

At the outset, Apple undertook a reasonable investigation to identify individuals at Apple linked to the Complaint's allegations. Mr. Cha was not identified at all, much less identified as relevant. *See* Lo Decl. ¶ 2. This is not surprising because Mr. Cha's role at Apple had nothing to do with software algorithms or enforcement of App Store Guidelines. Rather, Mr. Cha's job was non-technical, and focused on developing partnerships with healthcare companies and governments. *See* Ex. H[3] ("Cha

---

[1] An email server is a software system dedicated to sending and receiving emails. Server emails refer to emails stored within Apple's mail server. It does not include emails, or email copies, that may be downloaded or saved locally on a computer, or elsewhere.

[2] ██████████████████████████████████████████████████████████████

[3] All exhibits cited in this brief are to the Declaration of Jason Lo.

**FILED UNDER SEAL**

Tr.") 19:16-20:5.

Even though AliveCor personnel were aware of Mr. Cha and had met with him during his time at Apple, AliveCor also did not identify Mr. Cha as relevant – in this case or any other – until 18 months into the case. See Lo Decl. ¶¶ 4-6. And when that occurred, Apple promptly informed AliveCor on November 23, 2022, that Mr. Cha was a former employee and that Apple would have to investigate if it still had any of his custodial files. See Ex. C. Apple similarly informed Judge Kim on December 5, 2022. See Lo. Decl. ¶ 8. But Apple agreed that it would produce "Mr. Cha's custodial documents *to the extent they exist*," which is what Apple has done. See Ex. D. AliveCor's ludicrous claim that Apple tried to "hide" the availability of Mr. Cha's documents is squarely contradicted by the written record. And, ultimately, Apple was able to collect and search over 240,000 documents from Mr. Cha's custodial files.

Unable to link Mr. Cha to the Complaint's allegations, AliveCor attempts to create new ones: It notes [REDACTED]



See Dkt. No. 154 ("Mot.") at 3-4. But the Complaint does not allege [REDACTED]

AliveCor goes even further afield of the Complaint by arguing that Apple had a duty to preserve Mr. Cha's documents as part of patent infringement litigations in the International Trade Commission ("ITC") and in the Western District of Texas. Mot. at 7. But Mr. Cha's non-technical role is equally irrelevant to those cases. Indeed, the ITC *completed* its investigation without AliveCor ever seeking Mr. Cha's testimony or documents. See Amon Decl. ¶ 4. But more importantly, this Court should decline—as a matter of fairness—to decide whether Apple violated any duty to preserve documents in AliveCor's *other* litigations. AliveCor's own cited cases make clear that the duty to preserve applies only if the information "is relevant in *the action*." Mot. at 6 (emphasis added) (citing *Io Group Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *5 (N.D. Cal. Oct. 19, 2011)).

**Apple did not dispose of Mr. Cha's emails "with the intent to deprive" AliveCor of the use of those documents in this case.** AliveCor invokes Rule 37(e)(2), but ignores that, under its

heightened standard, this Court can order an adverse inference only if it concludes that Apple specifically deleted Mr. Cha's emails "with the *intent to deprive another party of the information's use in the litigation.*" FRCP 37(e)(2) (emphasis added). AliveCor cannot meet this standard because that is not what happened. As noted above, Mr. Cha departed Apple *before* the Complaint in this case was filed and Mr. Cha's emails became unavailable shortly thereafter as part of Apple's regular, automated procedures. At that time, AliveCor had not identified Mr. Cha as being relevant in *any* case against Apple, and none of Apple's lawyers were aware, or had reason to believe, that Mr. Cha might be even tangentially relevant to the Complaint's allegations. *See* Lo. Decl. ¶ 3. Neither Apple nor its lawyers acted in bad faith or with any intent to deprive AliveCor of Mr. Cha's server emails.

**AliveCor has not been prejudiced.** Not only did Apple meet its preservation obligations, but AliveCor has not shown that any relevant materials were lost or that it was prejudiced. Apple collected and searched over 240,000 custodial documents from Mr. Cha's files. Of those, only 45 were non-duplicative and responsive to this case. This miniscule responsiveness rate undermines AliveCor's claim that Mr. Cha "was an incredibly important custodian." Mot. at 1.

The only set of materials known to have been disposed of by virtue of Mr. Cha's departure is his server emails. But AliveCor ignores this fact altogether, failing to show that *these* documents had any unique value to this case. That failure is glaring: Mr. Cha's emails with other document custodians in this case have not been lost, and, if responsive, have been produced. And when AliveCor deposed Mr. Cha for *nearly seven hours*, it did not ask whether Mr. Cha had any potentially relevant email communications with anyone other than Apple's other email custodians in this case. Thus, AliveCor cannot demonstrate that any relevant emails have been lost.[4]

Indeed, *even if* Mr. Cha had exchanged relevant emails with an Apple employee who is not already a custodian in this case, the obvious remedy would have been for Apple to collect the emails of that individual for communications with Mr. Cha. After all, both prongs of Rule 37(e) require a showing that the information "cannot be restored or replaced through additional discovery." And even sanctions under the less restrictive standard of Rule 37(e)(1) permit a court only to "order

---

[4] AliveCor states that Apple "did not even issue a litigation hold notice to *anyone* within the company until at least August 2021." Mot. at 1 (emphasis added). This is false. Amon Decl. ¶ 2.

measures *no greater than necessary to cure the prejudice*." FRCP 37(e)(1) (emphasis added).

**AliveCor's motion is untimely.** For the foregoing substantive reasons, the Court should deny AliveCor's motion under both prongs of Rule 37. But additionally, the Court should reject AliveCor's motion as untimely under Local Rule 37-3 because it was *filed* weeks after the parties' agreed-to February 27, 2023 cutoff for *resolving* discovery motions, which, pursuant to L.R. 37-3, includes motions for discovery sanctions. *See, e.g.*, Ex. J. AliveCor has wielded the discovery cutoff as a sword to deprive Apple from obtaining important discovery. *See infra* pp. 13-15. It cannot now excuse its own delay.

Even more importantly, the lack of timeliness undermines the merits of AliveCor's claim, as well as the drastic remedy AliveCor now requests. The actions at the center of the Complaint occurred in 2018, were known to AliveCor in 2018, and yet AliveCor made a strategic decision not to sue Apple until 2021. *See* Compl. When AliveCor requested Mr. Cha as a custodian in this case in November 2022 (nearly *18 months* after the Complaint was filed and more than *four years* after the alleged anticompetitive actions) Apple promptly—and repeatedly—told AliveCor that because Mr. Cha is a former employee, Apple might not have all of his documents. *See* Ex. C; Lo Decl. ¶ 8. Moreover, the bulk of Mr. Cha's documents were produced on January 31, and he was deposed on February 11, 2023, weeks before the discovery cutoff. *See* Lo Decl. ¶ 11.

Had AliveCor raised this alleged issue in a timely manner, and had the Court determined remediation to be necessary, the Court would have had a number of options to identify "measures no greater than necessary to cure the [alleged] prejudice." FRCP 37(e). In delaying, AliveCor artificially manufactured a circumstance where it can pretend that less severe remedies cannot suffice. Adherence to Local Rule 37-3 precludes this gamesmanship.

Recently, when the law firm that represents AliveCor here (unsuccessfully) opposed spoliation findings in another case, they said: "It's an old movie cliché that when a character runs out of bullets, he throws his gun at his adversary in a final act of desperation." *See* Exs. L, M. AliveCor is now living out that cliché with this motion. The motion should be denied.

**II.   FACTS**

**A.   The Complaint**

**FILED UNDER SEAL**

1   The Complaint describes three sets of acts by Apple around 2018 that allegedly "broke" an
2   app AliveCor had previously offered for the Apple Watch: (1) that Apple made "undocumented
3   updates" to the Watch's software "throughout the first half and late summer of 2018," Compl. ¶ 5; (2)
4   that Apple made an alleged "change in watchOS 5 that made it effectively impossible for any third
5   party to provide heartrate analysis," Compl. ¶ 27; and (3) that Apple had a series of pretextual
6   communications with AliveCor about "unwritten App Store guidelines," Compl. ¶ 4. AliveCor did
7   not notify Apple about its antitrust theories prior to serving the Complaint on May 27, 2021.

**B.   Myoung Cha's Former Role At Apple**

Myoung Cha's last day at Apple was May 14, 2021. Cha Tr. 255:8-11. He had been at the company since 2015, where his work focused on developing partnerships with healthcare companies (such as insurers and pharmaceutical companies) and government entities (such as the government of Singapore), of which AliveCor is neither. Cha Tr. 19:23 – 20:5; Ex. P ("Williams Tr.") 47:23 – 48:5. Mr. Cha is not an engineer and never played a technical role at Apple or any role in terms of enforcing Apple's App Review Guidelines. Accordingly, there is no evidence that he knew about or was involved with the alleged "undocumented updates" in 2018, changes in watchOS 5, or communications with AliveCor about App Store Guidelines. Indeed, AliveCor's lawyers did not ask Mr. Cha about any of these issues. Nevertheless, Mr. Cha volunteered that he was not technical and not involved in algorithm development. Cha Tr. 33:15-19; 55:16-56:1; 242:4-21. He therefore would not have been involved in developing or implementing "unannounced updates" or changes to watchOS 5. With respect to communications with developers, Mr. Cha testified that if he had received requests from developers during meetings, such as for access to different data or functionalities than what Apple provided, he would forward such requests to others for handling, as he "didn't have an ability to, obviously, make those things happen at Apple." Cha Tr. 52:16-21. And no AliveCor witness testified that they communicated with Mr. Cha regarding the "App Store Guidelines" at issue in the Complaint.

**C.   The Complaint Makes No Allegations of** ▮▮▮▮▮▮▮▮▮▮

Rather than tying Mr. Cha to the *Complaint's* allegations, AliveCor repeatedly touts that well before the 2018 events at issue in the Complaint, ▮▮▮▮▮▮▮▮▮▮

**FILED UNDER SEAL**

1. ████████████████████████████████████████
2. ████████████████████████████████████████
3. ████████████████████████████████████████
4. ██████████████████████
5. But the Complaint does not allege that Apple ████████████████████
6. ████████████████████████████████████ To the contrary, the
7. Complaint alleges that Apple repeatedly changed the format of the health data so that it would be
8. entirely unusable to others; ████████████████████████████████████
9. ████████ See Compl. ¶ 27. Nor does the Complaint make reference to Apple's decisions as
10. ████████████████████████████, or Apple's ████████████████
11. ████████████ Mot. at 3. Similarly, AliveCor's response (as it stands at the close of fact
12. discovery) to Apple's Interrogatory No. 2, which requests the factual bases for AliveCor's allegations
13. regarding Apple's anticompetitive acts or omissions, makes no mention of Mr. Cha, ████████
14. ████████████████████████████████████████ See Ex. R.

D. **Disposition of Mr. Cha's Emails and Subsequent Procedural History**

16. Mr. Cha's last day at Apple was May 14, 2021, and his departure was publicly-announced.
17. See Exs. S, T, U. Under Apple's normal retention procedures, ████████████████████
18. ████████████████████████████████████████
19. ████████████████████████ Mr. Cha's server emails thus became unrecoverable
20. shortly after his departure, with no involvement or knowledge by any lawyer involved in this case.
21. On June 29, 2022, more than a year after Mr. Cha had departed Apple, Magistrate Judge Kim
22. ordered the parties to search and produce documents from eight custodians. Dkt. No. 68. AliveCor
23. did not designate Mr. Cha as a selected custodian at that time, nor did AliveCor identify Mr. Cha in
24. its Initial Disclosures, served on August 20, 2021, or its Supplemental Disclosures served on
25. November 4, 2022. See Lo Decl. ¶¶ 4-6; Exs. A-B.
26. Not until November 14, 2022 (nearly 18 months after the Complaint was filed), did AliveCor
27. first seek Mr. Cha as a custodian. See Ex. C. Apple promptly informed AliveCor that "Mr. Cha left
28. Apple's employ before AliveCor filed its Complaint, and accordingly [Apple] would need to

investigate whether Apple has any of his custodial documents." *Id*.  AliveCor was therefore on notice that Apple might not have all (or any) of Mr. Cha's documents remaining in its possession. Undeterred, AliveCor moved for leave to add Mr. Cha as a custodian.

On December 5, 2022, during a hearing on that motion, Apple explained to Judge Kim that Apple may not have any documents for Mr. Cha as he had left Apple before the Complaint was filed. *See* Lo Decl. ¶ 8.  Apple's counsel explained the reason for this disclosure: in the event Judge Kim granted AliveCor's request to add Mr. Cha as a custodian, Apple did not want there to be a surprise if Apple did not have all of Mr. Cha's documents.  *Id.*  Magistrate Judge Kim acknowledged that disclosure, and later granted AliveCor's request to add Mr. Cha as a document custodian.  *Id.*

On December 12, 2022, AliveCor acknowledged Apple may not have all of Mr. Cha's documents, asking Apple to "confirm that Apple is collecting Mr. Cha's documents or at the very least investigating the *availability of those documents*."  Ex. D (emphasis added).  Apple responded that it would collect "Mr. Cha's custodial documents, *to the extent they exist*."  *Id*. (emphasis added). AliveCor did not disagree with Apple's commitment to produce Mr. Cha's remaining documents, nor did it inquire further regarding availability of Mr. Cha's documents for the next several months.

On December 27, 2022, weeks after Judge Kim granted AliveCor's motion to add Mr. Cha as a custodian, AliveCor finally proposed search terms for Mr. Cha's documents.  *See* Ex. E.  Apple provided revisions to those terms on January 10, 2023, including corrections to syntax errors so the terms could properly run.  *See id.*  Apple then applied the search terms to the over 240,000 documents that it was able to collect from Mr. Cha's remaining files, reviewed all documents that hit on the search terms, and produced all responsive, non-duplicative documents.  *See* Lo Decl. ¶ 11.

AliveCor deposed Mr. Cha on February 11, 2023.  *See* Lo Decl. ¶ 14. AliveCor requested that Mr. Cha's documents be produced by 10 days prior to the deposition.  Apple produced substantially all of Mr. Cha's documents on January 31, 2023, with 5 additional documents produced on February 8, 2023.  *See* Lo Decl. ¶ 11. AliveCor first raised concerns regarding Mr. Cha's documents on February 9, 2023.  *See* Ex. G.  Over the next two weeks, Apple responded to AliveCor's emails and questions and met and conferred with AliveCor regarding Mr. Cha's documents.  *See id.*

Fact discovery closed on February 27, 2023.  By agreement of the parties and Order of the

**FILED UNDER SEAL**

1. Court, all discovery-related motions, including motions for sanctions, were required to have been
2. resolved by this date. *See* Dkt Nos. 55 at 10, 58 at 1, 104 at 2; Ex. J.
3. **III. ARGUMENT**
4.     A.    **Apple Took Reasonable Steps To Preserve Documents For This Litigation.**
5.     Federal Rule 37 "recognizes that 'reasonable steps' to preserve [documents] suffice; it does
6. not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Thus, a
7. litigant does not violate the duty to preserve by disposing of documents where it "had no reason to
8. anticipate the[] files would need to be preserved." *Best Label Company v. Custom Label & Decal,*
9. *LLC*, 2022 WL 1525301, at *4–5 (N.D. Cal. May 13, 2022).  And, while parties must take some steps
10. to investigate and identify relevant documents to preserve, "it may not be feasible for counsel to
11. speak with every key player" and it may be unrealistic to presume that counsel will succeed in
12. identifying and searching all sources of discoverable information.  *See Zubulake v. UBS Warburg*
13. *LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).
14.     Here, Apple acted well within the scope of the Rule's requirements to take reasonable steps to
15. identify the individuals and data sources at Apple with information potentially relevant to this action.
16. That investigation included conducting interviews with Apple employees and reviewing documents.
17. *See* Goldberg Tr. 39:10-40:5; Lo Decl. ¶ 2.
18.     It is unsurprising that Mr. Cha was not identified as relevant.  Mr. Cha's responsibilities at
19. Apple focused on creating strategic partnerships with healthcare companies and governments.  Cha
20. Tr. 19:23 – 20:5; Williams Tr. 47:23 – 48:5.  Mr. Cha had no responsibilities for developing, selling,
21. or marketing the Apple Watch, the ECG app, or the IRN feature, and had no involvement in changes
22. made to Apple's algorithms in watchOS 5.  He was not involved in enforcing Apple's App Store
23. Guidelines.  In addition, Mr. Cha was no longer at the company when AliveCor's Complaint was
24. filed, and therefore was not readily available to participate in Apple's investigation.
25.     AliveCor now says that Mr. Cha had discussions about █████████████████
26. ████████████████████████████████████████████████
27. Mot. at 3–4.  But AliveCor's Complaint contains no allegations related to any ████
28. ████████████████████████████  And AliveCor's Initial Disclosures as

**FILED UNDER SEAL**

1  of November 4, 2022 did not identify Mr. Cha at all.  Even as of the close of fact discovery (February
2  27, 2023), none of AliveCor's interrogatory responses make mention of either ▮▮▮▮▮▮ or
3  of Mr. Cha.  *See* Ex. R.  Further, the undisputed facts here are that ▮▮▮▮▮▮
4  ▮▮▮▮▮▮.  Mr. Cha testified that ▮▮▮▮▮▮
5  ▮▮▮▮▮▮
6  ▮▮▮▮▮▮
7  ▮▮▮▮▮▮
8  ▮▮▮▮▮▮
9  ▮▮▮▮▮▮
10 ▮▮▮▮▮▮

11          AliveCor also argues that Apple's duty to preserve Mr. Cha's documents began in December
12 2020, when AliveCor filed its first patent case against Apple, and was reinforced in April 2021, when
13 it filed a patent action before the ITC.  Mot at 1.  There are reasons to question whether Mr. Cha is a
14 "key player" in the patent cases.  Chief among those is that even though AliveCor was aware of Mr.
15 Cha, and AliveCor personnel met with Mr. Cha while he was at Apple, *see* Cha Tr. 30:24-31:16,
16 AliveCor never sought Mr. Cha's testimony or electronic documents during the ITC investigation;
17 that case has closed, and AliveCor has not sought to re-open the factual record.  Amon Decl. ¶ 4.
18 Moreover, given his non-technical role, focused on strategic health-related partnerships, it is far from
19 obvious that a reasonable investigation should have identified Mr. Cha as a person likely to have
20 information relevant to the patent actions.
21          But the Court need not—and should not—reach the question of whether Apple had a duty to
22 preserve documents in other litigations.  The preservation obligation is case specific and even when it
23 exists, it does not require the party to retain "every shred of paper, every e-mail or electronic
24 document, and every backup tape[;]" instead, it generally extends to the documents of "those
25 employees likely to have relevant information—the 'key players' in the case." *Zubulake v. UBS*
26 *Warburg*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003).  *See also* Fed. R. Civ. P. 37(e) advisory
27 committee note (2015) ("The fact that a party had an independent obligation to preserve information
28 does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the

party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.").

Thus, a court's evaluation of the preservation obligation requires knowledge of the specific case's allegations, facts, and most importantly, context—including what other sources of discovery were provided, how that discovery was used, and the importance of any allegedly lost evidence. As to cases not before it, this Court simply cannot address these questions with the requisite nuance, in part because the ITC Protective Order, *see* Ex. Q, bars Apple from even presenting this Court with most of the information that would be relevant to these questions including: AliveCor's complaint and pre- and post-hearing briefing identifying its legal claims and their alleged support, AliveCor's expert reports, AliveCor's interrogatory responses (to see whether they mention Mr. Cha), hearing testimony, or the unredacted Initial Determination issued by the Administrative Law Judge.

**B.     There Was No Intentional Spoliation**

Because Apple was unaware of Mr. Cha's supposed connection to this case, the routine disposition of his server emails shortly after Mr. Cha's departure cannot be characterized as intentionally performed to deprive AliveCor from utilizing those emails in this case.

This lack of intent independently mandates denial of AliveCor's motion because the adverse instruction AliveCor seeks is available "only upon finding that the party acted *with the intent to deprive another party of the information's use in the litigation*." Fed. R. Civ. P. 37(e)(2) (emphasis added); *see also Wisk Aero LLC v. Archer Aviation, Inc.*, 2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ("merely showing that he intentionally deleted the *files* is insufficient to show he deleted any *metadata* <u>with the intent to deprive</u> [plaintiff] of the metadata" (underlined emphasis added)).

AliveCor never acknowledges, much less satisfies, Rule 37(e)(2)'s requirements. It instead urges this Court to follow cases decided before the current iteration of Rule 37(e)(2). Mot. at 10. In that earlier era, courts issued sanctions based on "inherent authority," which they often interpreted to allow an adverse inference upon finding *grossly negligent*, or even *negligent* behavior.

But as to electronic discovery, those cases have not been good law since the 2015 Amendment of Rule 37. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (explaining that the revised Rule 37 "forecloses reliance on inherent authority or state law to

1   determine when certain measures should be used."); *see also Nuvasive, Inc. v. Madsen Med., Inc.*,
2   2016 WL 305096, at *2-3 (S.D. Cal. Jan. 26, 2016) (vacating a pre-amendment decision to impose an
3   adverse inference instruction, because the record did not support *intentional* spoliation under
4   amended FRCP 37(e)).  Under the current language of the Rule, "negligent or even grossly negligent
5   behavior is insufficient to support sanctions under Rule 37(e)(2)."  *Aramark Mgmt., LLC v.
6   Borgquist*, 2021 WL 864067, at *6 (C.D. Cal. Jan. 27, 2021); *see also hiQ Labs, Inc. v. LinkedIn
7   Corp.*, 2022 WL 18399982, at *21 (N.D. Cal. Nov. 4, 2022) (same).

8         Moreover, Rule 37 now distinguishes between a failure to preserve documents and an intent
9   to destroy documents to *deprive the opposing party* of those materials.  The latter cannot be
10  concluded merely because the former occurred.  *Dish Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL
11  11270394, at *4 (N.D. Cal. Oct. 19, 2022) ("[D]efendants' failure to preserve Mr. Shahs' emails was
12  negligent or perhaps grossly negligent.  But the facts do not show intent.") (citations omitted); *see
13  also SEC v. CKB168 Holdings, Ltd.*, 2016 WL 11796950, at *4 (E.D.N.Y. Feb. 2, 2016), *report and
14  recommendation adopted*, 2016 WL 11796983 (E.D.N.Y. Sept. 28, 2016) ("a court may not now
15  impose an adverse jury instruction as a sanction for the spoliation of ESI absent a showing of a loss
16  of ESI 'because a party failed to take reasonable steps to preserve it,' *as well as* 'intent to deprive
17  another party' of the use of that information." (emphasis added)).

18        Thus, even if it were true that Mr. Cha's documents are "damning," that Mr. Cha was an
19  "obvious" custodian, or that Apple delayed in disclosing that it might have limited documents for Mr.
20  Cha, Mot. at 9-11, none of those claims actually show that Apple disposed of Mr. Cha's emails with
21  *the intent of depriving* AliveCor of those emails in this litigation.

22        And in any event, none of those claims are true.  As to AliveCor's false and outrageous
23  accusation that Apple tried to hide the fact that it no longer had all of Mr. Cha's emails, the record
24  speaks for itself.  On November 23, 2022 and December 5, 2022, Apple told AliveCor that Mr. Cha
25  had departed the company and that Apple might not have all, indeed *any*, of Mr. Cha's materials. *See*
26  Lo Decl. ¶¶ 7–8, Ex. C.  AliveCor acknowledged this on December 12, 2022, asking Apple to
27  confirm that it was collecting or "investigating the availability" of Mr. Cha's documents, to which
28  Apple confirmed that it was collecting Mr. Cha's documents "to the extent they exist."  Ex. D.  That

1  is what Apple did.  AliveCor did not raise concerns about Apple preservation until just two days
2  before Mr. Cha was scheduled to be deposed.  See Lo Decl. ¶¶ 13-14, Ex. G.  AliveCor's months-
3  long disinterest in Apple's disclosures that Mr. Cha was a former employee is not evidence of
4  Apple's "obfuscation," and certainly is not evidence that the much-earlier disposition of Mr. Cha's
5  emails was intended to deprive AliveCor of those documents.

6        Moreover, Mr. Cha's documents and testimony are not "damning."  Rather, Mr. Cha's
7  proposals are illustrative of a culture of open dialogue at Apple, and demonstrate that an even more
8  foundational shared value at Apple overrode ███████████████████ the deep belief at Apple
9  that health data is "the user's data and [Apple] owed it to the consumer to write this data about their
10 body into HealthKit and it was up to the consumer there to decide whether to share it."  Cha Tr.
11 259:4-8.  This belief means that (with user consent) third party companies such as AliveCor can offer
12 products using health data that Apple devices measured, collected, and made available for *free*.

13       The patent allegations in the ITC and WDTX also do not demonstrate the intentionality
14 required by Rule 37(e)(2).  Mot. at 1.  Even if there were a duty to preserve Mr. Cha's documents in
15 connection with those cases (a question this Court should not reach), AliveCor cannot show that the
16 disposition of Mr. Cha's emails was intentionally done to deprive AliveCor of those documents in
17 any litigation.  See *hiQ Labs, Inc.*, 2022 WL 18399982, at *20 ("In sum, these authorities appear to
18 require a specific intent to deprive, rather than a mere knowing failure to preserve.").

19 **C.    The Disposition of Mr. Cha's Server Emails Did Not Prejudice AliveCor**

20       AliveCor's prejudice argument is a single conclusory statement: because "AliveCor cannot
21 replicate Mr. Cha's files from other custodians' accounts or via his deposition testimony, AliveCor's
22 prejudice is clear."  Mot. at 12.  But that statement does not make sense as a matter of logic or law.

23       First, while Mr. Cha's server emails were routinely disposed of long before either Apple or
24 AliveCor identified him as potentially relevant to this case, AliveCor does not contend that Apple
25 failed to preserve any other documents of Mr. Cha's and Apple was able to collect over 240,000 of
26 Mr. Cha's documents, of which only 45 were ultimately responsive and non-duplicative.  And despite
27 deposing Mr. Cha for nearly seven hours after Apple had completed production of Mr. Cha's
28 materials, AliveCor never asked Mr. Cha whether there might have ever existed additional relevant

**FILED UNDER SEAL**

documents or categories of relevant documents beyond the documents already produced by Apple.[5] In the absence of questions—much less testimony—there is no reason to assume, as AliveCor has, that there ever were relevant documents beyond the 240,000+ documents Apple currently possesses. *See Best Label Co. v. Custom Label & Decal, LLC*, 2022 WL 1525301, at *5 (N.D. Cal. May 13, 2022) (finding plaintiff's argument that it was prejudiced by defendant's failure to preserve certain files to be speculative in part because plaintiff had the opportunity to depose defendants on the nature of the deleted files but did not do so).

Second, as to Mr. Cha's server emails, there is no loss or prejudice here because Mr. Cha's emails to or from any of the other eight custodians in this case have been preserved and produced by virtue of Apple's collection and review of those custodians' documents. *See Stemmelin v. Matterport, Inc.*, 2022 WL 818654, at *3 (N.D. Cal. Mar. 17, 2022) (finding no prejudice resulted from the missing ESI from custodians because they would have communicated with other custodians whose ESI was retained). Again, AliveCor did not ask Mr. Cha with whom he emailed on relevant subject matters during his deposition. Without that information, the Court cannot conclude that responsive emails are actually "lost," much less that they "cannot be restored or replaced through additional discovery." FRCP 37(e)(1). After all, those emails might have never existed, or they might exist and be recoverable through another Apple employee's ESI. Without loss or prejudice, sanctions are not appropriate under either prong of Rule 37(e).

Besides failing to demonstrate that potentially responsive documents have in fact been lost, AliveCor also fails to address whether such materials would have been cumulative. *SiteLock LLC v. GoDaddy.com LLC*, 2022 WL 3716499, at *12 (D. Ariz. Aug. 29, 2022) (finding no prejudice where alleged destruction of information was duplicative of information already produced). AliveCor now has both documents and testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ The mere possibility that Mr. Cha expressed the same views on other occasions, is not prejudicial to AliveCor, much less to the point that sanctions are warranted.

---

[5] While AliveCor's counsel asked Mr. Cha whether he "created more than 45 e-mails" during his time at Apple, he did not ask any questions regarding the nature or content of Mr. Cha's e-mails, besides those already produced in this litigation. Cha Tr. 22:5-17.

### D.  AliveCor's Motion is Untimely.

Local Rule 37-3 requires that all discovery-related motions be filed within 7 days of the close of fact discovery. The Local Rules' commentary makes clear that this includes any "Discovery-related motion[]," *expressly including* any motion "regarding *the duty to preserve documents*, including *spoliation motions*. . . ." L.R. 37-3 Commentary (emphases added). In this case, the parties agreed, and the Court ordered, that all discovery-related motions must be resolved by the close of fact discovery, or February 27, 2023. *See* Dkt Nos. 55 at 10, 58 at 1, 104 at 2; Ex. J. AliveCor's motion, which alleges spoliation and seeks sanctions, *see* Mot. at ii, is a "discovery-related motion" and the deadline to resolve it was February 27, 2023.

As an issue of fundamental fairness, AliveCor cannot ignore deadlines and Rules it has itself used to hamper Apple's defense. On February 27, 2023, AliveCor asked Magistrate Judge Kim to deny discovery disputes previously raised by AliveCor and Apple on February 23, 2023 on the grounds that the motions would be resolved *after* February 27, 2023. Noting that the "discovery motion completion deadline [is] February 27, 2023," AliveCor asserted the motions "come too late and therefore should each be denied as untimely." Ex. J. While Judge Kim made an exception for those motions since they were submitted before the deadline, AliveCor cannot square its position that the motions submitted on February 23, 2023 were untimely, with its claim that the present motion, filed 21 days later and 17 days after the deadline, is not.

The cases AliveCor cites to support its claim of timeliness were decided under an *earlier* version of L.R. 37-3–which did not include the Commentary that makes clear that discovery-related sanctions motions are "discovery-related motions" subject to L.R. 37-3's deadline. *See* Exhibit K. The *Apple Inc. v. Samsung Elecs. Co.* court's conclusion that only L.R. 7-8 governs the timing of sanctions motions, 888 F. Supp. 2d 976, 996 (N.D. Cal. 2012), and the *Kannan v. Apple Inc.* court's conclusion that L.R. 37-3's deadline does not apply to motions for discovery sanctions, 2020 Wl 9048723, at *6 (N.D. Cal. Sep. 21, 2020), are outdated in light of the current language of L.R. 37-3. Nor can AliveCor salvage its motion by invoking Local Rule 7-8 and Fed. R. Civ. P. 51. *See* Mot. at 13. Both Rules impose *additional* timing requirements; neither replaces L.R. 37-3. In any event, AliveCor has not complied with L.R. 7-8's requirement that a party bring motions for sanctions "as

**FILED UNDER SEAL**

soon as practicable" because by November 2022, AliveCor knew that Mr. Cha had departed Apple and Apple might not have all his documents, and yet raised no questions regarding Apple's preservation until February 9, 2023.

This Court should not grant relief from L.R. 37-3.  Contrary to AliveCor's false accusations, Apple has acted in good faith to comply with its discovery obligations in this case.  Once Judge Kim granted leave to add Mr. Cha as a custodian, Apple identified and processed over 240,000 documents from Mr. Cha, and produced the majority of his responsive documents by January 31, less than 3 weeks after the parties agreed to search terms.  *See* Lo Decl. ¶ 11.  Nor did Apple engage in any gamesmanship with regard to the scheduling of its 30(b)(6) witnesses.  Apple's 30(b)(6) witness on records issues was deposed on February 24, 2023 based entirely on the witnesses' and counsel's availability.  *See* Lo Decl. ¶ 12.  Indeed, the deposition of Apple's 30(b)(6) witness on records issues was scheduled before AliveCor first raised any concern with the preservation of Mr. Cha's documents, and accordingly its timing was clearly unrelated to AliveCor's current motion.  *See* Ex. F.

The timeliness of AliveCor's motion is also relevant to its merits.  As noted above, a key element of Rule 37(e) is whether any lost materials can be "restored or replaced through additional discovery," and sanctions under Rule 37(e)(1) must be tailored to "measures no greater than necessary to cure the prejudice."  AliveCor's decision to flout L.R. 37-3 means that the parties have not only already completed fact discovery, but they also have exchanged opening expert reports.  In this procedural context, there is no opportunity to consider additional discovery as a remedy without completely upending the case schedule, as well as perhaps the completed expert reports.

Having violated L.R. 37-3 to create this situation, AliveCor should not be rewarded with a windfall remedy that far exceeds what FRCP 37(e) authorizes.

**IV. CONCLUSION**

For the reasons detailed above, AliveCor's motion should be denied.

DATED: March 30, 2023                                          GIBSON, DUNN & CRUTCHER LLP

By:     /s/ *Jason C. Lo*
       Jason C. Lo

*Attorney for Defendant Apple, Inc.*

**CERTIFICATE OF SERVICE**

I, Jason Lo, certify that on March 30, 2023, the foregoing **DEFENDANT APPLE, INC.'S OPPOSITION TO ALIVECOR, INC.'S MOTION FOR ADVERSE JURY INSTRUCTION** was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing systems.


DATED: March 30, 2023                                By:   /s/ *Jason Lo*
                                                                    Jason Lo