UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALIVECOR, INC.,

             Plaintiff,

    v.

APPLE INC.,

             Defendant.

Case No.  21-cv-03958-JSW

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING MOTION TO STRIKE**

Re: Dkt. No. 116

Now before the Court for consideration is the motion to dismiss and strike portions of the first amendment complaint ("FAC") filed by Defendant Apple Inc. ("Apple").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the foregoing reasons, the Court GRANTS the motion to dismiss and DENIES the motion to strike.

**BACKGROUND**

This case involves allegations that Apple violated antitrust laws based on its alleged monopolization of the aftermarket for heartrate analysis apps.  Plaintiff AliveCor, Inc. ("AliveCor") originally filed this action on May 25, 2021, asserting claims under Section 2 of the Sherman Act and California's Unfair Competition Law.  On August 22, 2022, AliveCor sought leave to supplement the complaint to assert a new theory alleging that Apple instituted a series of vexatious proceedings before the U.S. Patent and Trademark Office ("USPTO") seeking to invalidate AliveCor's patents.  According to AliveCor, Apple is using these IPR proceedings to retaliate for AliveCor's lawsuits against Apple.  The Court granted AliveCor's motion but afforded Apple the opportunity to test the theory on the merits by way of a motion to dismiss should it so choose.  (Dkt. No. 105 ("10/18/22 Order") at 4.)

AliveCor filed the FAC on October 19, 2022.  (Dkt. No. 106.)  In the FAC, AliveCor asserts that Apple violated federal antitrust and state unfair competition laws by initiating *inter partes* review ("IPR") proceedings in the USPTO.  Since June 2021, Apple has filed ten IPR petitions regarding patents owned by AliveCor.[1]  (Dkt. No. 118, Declaration of Jason Lo ("Lo Decl."), Ex. A.)  AliveCor challenges five of Apple's IPR petitions against AliveCor's technology (the "Challenged IPRs"), alleging that Apple is engaging in the IPR process with no regard for the success of the litigation and for the sole purpose of raising AliveCor's litigation costs.  (FAC ¶ 98.).  The patents at issue in the Challenged IPRs relate to AliveCor's KardiaMobile Card technology and inventions relating to wireless, subsonic transmission of ECG data to a phone or other personal computing device.  (*Id.*)  AliveCor alleges that the Challenged IPRs do not relate to the merits of any parallel litigation or technology that Apple wishes to use and are solely designed to drive up AliveCor's litigation costs thus diverting crucial funding any from competition with Apple on the merits.  (*Id*. ¶¶ 100-101.)  AliveCor alleges the Challenged IPRs are "inextricably linked" to the underlying alleged anticompetitive conduct because the litigation is intended to further impinge competition and damage AliveCor.  (*Id.* ¶ 106.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

### A.      Applicable Legal Standard.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and

---

[1] Apple requests judicial notice of Exhibits A-D to the Declaration of Jason Lo, which are copies of filings of IPR proceedings referenced in the FAC and Apple's motion to dismiss.  AliveCor has not opposed the request for judicial notice.  The Court GRANTS the request and takes judicial notice of Exhibits A-D. *Threshold Enter. Ltd. v. Pressed Juicery Ltd.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice.").

United States District Court
Northern District of California

conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Id.* The Court may review matters that are in the public record, including pleadings, orders, and other papers filed in court. *See id.*

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

**B.     The *USS-POSCO* Exception to the *Noerr-Pennington* Doctrine Does Not Apply.**

The First Amendment guarantees the "right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. The *Noerr-Pennington* doctrine derives from this constitutional guarantee. Generally, it holds that an individual who petitions the government for redress will be immune from any statutory liability for their petitioning conduct. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 934 (9th Cir. 2006) (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). The doctrine "immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies." *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). Under the

3

*Noerr-Pennington* doctrine, "[c]oncerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).

Apple argues that the *Noerr-Pennington* doctrine immunizes it from liability for its IPR petitioning conduct. AliveCor contends that the *Noerr-Pennington* doctrine does not bar its claim because the new allegations fall within an exception to the *Noerr-Pennington* doctrine. Pleading an exception to the *Noerr-Pennington* doctrine requires "specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redev. Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988). AliveCor claims that the "sham litigation" as set forth in *USS-POSCO Industries v. Contra Costa Building. & Construction Trades Council*, 31 F.3d 800 (9th Cir. 1994) is applicable here.

The *USS-POSCO* exception applies "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose." *Sosa*, 437 F.3d at 938 (citing *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-11 (9th Cir. 1994)). "When dealing with a series of lawsuits, the question is not whether any one of them has merit…but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *USS-POSCO*, 31 F.3d at 811. To determine whether the *USSO-POSCO* exception applies, courts ask: "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *Id*. To answer this question, courts often look to the number of actions filed and the success of those actions. *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015) ("In deciding whether there was such a policy of filing petitions with or without regard to merit, a court should perform a holistic review that may include looking at the defendant's filing success—i.e., win-loss percentage—as circumstantial evidence of the defendant's subjective motivations.").[2]

---

[2] Apple argues AliveCor must show that the suit is "objectively baseless" in order for *USS-POSCO* exception to apply. The "objectively baseless" requirement comes from *Professional*

4

For example, in *USS-POSCO Industries*, the record showed that "fifteen of the twenty-nine lawsuits" filed by the defendants had been successful.  31 F.3d at 811.  Thus, the Ninth Circuit reasoned that "[t]he fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success." *Id*.  The Ninth Circuit held that plaintiff failed to show that the defendants' conduct fell within the second sham exception based on defendants' success rate alone. *Id*.

Recently in *B&G Foods North America, Inc. v. Embry*, 29 F. 4th 527 (9th Cir. 2022), the Ninth Circuit addressed the *USS-POSCO* sham litigation exception.  In *B&G*, the plaintiff alleged that the defendants had filed or threatened dozens of cases and extracted over a million dollars in penalties and fines. *Id*. at 539.  The complaint, however, did not include allegations about the defendants' success rate. *Id*.  The Ninth Circuit explained that the "only reasonable inference is that Defendants have been largely successful, which as in *USS-POSCO Industries*, cannot be reconciled with the theory that Defendants were threatening to sue and suing without regard to success." *Id*.  Thus, the Ninth Circuit affirmed the district court's finding that the second sham exception was inapplicable.

Here, AliveCor alleges that the "[Challenged] IPRs are solely meant to kill AliveCor's business and directly attack the company."  (FAC ¶ 98.)  AliveCor alleges that none of the five IPR petitions "relate to the merits of any parallel litigation or technology Apple wishes to use, but instead [are] solely designed to drive up AliveCor's litigation costs."  (*Id.* ¶ 100.)  AliveCor further alleges that "Apple does not care at all whether these IPRs are meritorious."  (*Id.* ¶ 102.)  Missing from the complaint, however, are allegations regarding the success rate of the IPR petitions.  As in *B&G*, absent allegations regarding the success rate of the IPR petitions, the Court

*Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993), which set forth a strict two-part analysis.  Ninth Circuit precedent suggests that the two-part analysis from *Professional Real Estate Investors* applies to single-suit sham claims and does not apply to allegations of a pattern or series of harassing lawsuits. *See USS-POSCO Indus.,* 31 F.3d at 810-11.  However, "some allegations pertaining to baselessness are necessary to support application of the sham litigation exception for a pattern or series of filing baseless lawsuits." *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc. 220*, No. 119CV00416LJOSKO, 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020).

United States District Court
Northern District of California

United States District Court
Northern District of California

lacks a factual basis to plausibly infer that the IPR petitions are a sham. The Court does find the complaint plausibly shows that Apple's IPR petitions constitute sham litigation under the *USS-POSCO* exception.

Nor does the number of IPR petitions alleged suggest a pattern of filings with the purpose of harassment. The Ninth Circuit has not set a specific number of lawsuits necessary to establish a pattern of baseless lawsuits. A review of cases addressing the sham exception suggests that "five or six lawsuits is on the lower end of what can constitute a pattern or series of harassing litigation." *Wonderful Real Est. Dev. LLC*, 2020 WL 91998, at *10 (collecting cases); *see also Hanover 3201 Realty, LLC*, 806 F.3d at 181 (finding four actions sufficient to qualify for the *USS-POSCO* sham litigation exception but further holding that four actions would not always qualify as a pattern for purposes of the exception.).

Here, Apple has filed ten IPR petitions against AliveCor's technology. However, AliveCor urges the Court to consider just the five IPR petitions challenged in the FAC. But if it accepts AliveCor's narrow view of the relevant IPR proceedings, the Court is not persuaded that the five challenged IPR petitions are sufficient to qualify as a pattern under *USS-POSCO*. And if the Court considers all ten IPR petitions, which comes closer to establishing a pattern, AliveCor's allegations still fall short because they allege nothing about these other petitions, including their success rate or facts establishing that Apple instituted them without regard to their success.

For these reasons, the Court concludes that the *USS-POSCO* exception does not apply and thus, *Noerr-Pennington* immunity bars AliveCor's new theory of liability.

**C.    The *Hynix* Doctrine Does Not Apply.**

"[O]therwise protected litigation can be a part of an 'anticompetitive scheme' claim…[if] the other aspects of the scheme independently produce anticompetitive harms…[and] the accused [] litigation was causally connected to these anticompetitive harms." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1147 (N.D. Cal. 2020) ("[E]ven if petitioning activity arguably cannot be a basis for liability under the *Noerr-Pennington* doctrine, that does not mean that a plaintiff cannot get damages based on the petitioning activity"). Thus, under the *Hynix* doctrine, a

6

plaintiff seeking to establish the right to antitrust damages from petitioning activity if must plausibly allege: (1) the existence of an independent anticompetitive injury and (2) a causal connection between the petitioning conduct and the pre-existing anticompetitive injury. *Hynix*, 527 F. Supp. 2d at 1097.

Apple contends that the conduct alleged in the original complaint lacks a causal connection to Apple's filing of the IPRs and thus, *Hynix* does not apply. AliveCor asserts that in so arguing, Apple attempts to artificially limit *Hynix* to factually similar cases such that the causal connection element can only be satisfied in cases involving standard setting organizations and subsequent patent litigation.

The Court disagrees with AliveCor's characterization of Apple's argument. Apple does not argue that a case much be factually on all fours with *Hynix* for the doctrine to apply. Rather, Apple contends that to satisfy the "causal connection" element of *Hynix*, the challenged litigation must be an essential step in the underlying anticompetitive scheme. The Court agrees. The cases cited by both parties involved allegations that the challenged petitioning activity was a critical step in the alleged anticompetitive exercise of market power. For example, in *hiQ Labs*, on which AliveCor relies, the defendant sent pre-suit demand and cease-and-desist letters to competitors to bar access to public portions of the defendant's website. 485 F. Supp. 3d at 1142-43. The alleged underlying anticompetitive conduct was the defendant's denial of the website access. *Id.* Thus, the court agreed that the pre-suit demand letters furthered the defendant's scheme to deny competitor's access to portions of its website under *Hynix*. *Id.*

Here, in contrast, AliveCor fails to adequately allege how Apple's IPR petitions, which involve technology not at issue in this litigation, are a critical step in the alleged underlying anticompetitive injury—changes to the watchOS heartrate app. AliveCor's allegations fail to establish that the IPR proceedings arise out of depend on, or are the mechanism to carry out the purported underlying anticompetitive conduct related to changes to the watchOS heartrate app. Nor has AliveCor pointed to a case where *Hynix* has been applied to petitioning conduct as attenuated from underlying anticompetitive conduct as that alleged here. The Court is not persuaded that the *Hynix* doctrine is broad enough to encompass the activity alleged here.

7

The Court finds AliveCor has failed to allege a causal connection between the petitioning activity and the underlying anticompetitive harm as required under *Hynix* and grants the motion to dismiss on this basis.

**D.      The Court Denies Apple's Anti-SLAPP Motion.**

Apple argues AliveCor's new allegations should be stricken pursuant to California's anti-SLAPP statute, and Apple should be awarded its attorneys' fees incurred in litigating this motion.[3] *See* Cal. Civ. Proc. Code § 425.16.

California's anti-SLAPP statute permits a party to "file a special motion to strike a cause of action or particular claims underlying a cause of action that arise from activity protected by the anti-SLAPP statute." *Olson v. Doe*, 12 Cal. 5th 669, 678 (2022). "To prevail on an anti-SLAPP motion to strike, the defendant must first make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188-89 (9th Cir. 2017) (internal citation omitted). If the defendant makes the required showing, the plaintiff must then demonstrate a probability of prevailing on the challenged claim. *Id.*

With regard to the first requirement, Apple contends that AliveCor's state law UCL claim should be stricken because it arises from Apple's filings of the IPR petitions, which is conduct that falls within the protections of the anti-SLAPP statute. AliveCor argues that Apple cannot satisfy the first requirement because it is Apple's alleged exclusionary conduct in the market for heartrate analysis apps that gives rise to the unfair competition claim; the IPR petitions are incidental to that core antitrust claim and thus, the anti-SLAPP statute does not apply.

To determine whether a defendant has met the first requirement, the court asks two questions: "(1) From what conduct does the claim arise? And (2) is that conduct in furtherance of the rights of petition or free speech?" *Jordan-Benel*, 859 F.3d at 1189. "[F]or purposes of anti-

---

[3] The parties agree that California's anti-SLAPP statute cannot be used to strike federal claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims."). Thus, the Court considers Apple's anti-SLAPP arguments only as to AliveCor's state law unfair competition claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

SLAPP, the conduct from which a claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff." *Id*. at 1191.  Where a cause of action is based on both protected and unprotected activity, "the cause of action will be subject to section 425.16 unless the protected conduct is merely incidental to the unprotected conduct."  *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005).

Here, the Court agrees with AliveCor that the gravamen of its suit is its antitrust claims based on Apple's alleged monopolization of the aftermarket for heartrate analysis apps.  That is the primary injury-producing conduct upon which AliveCor bases its claim, and the challenged IPR petitions are incidental to that core antitrust claim.  For this reason, the Court concludes that the anti-SLAPP statute is inapplicable to AliveCor's new allegations and denies Apple's motion and request for attorneys' fees.

AliveCor also asks the Court to award it attorneys' fees.  Under the anti-SLAPP statute, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."  Cal. Civ. Proc. Code § 425.16.  Section 128.5 defines "frivolous" to mean "totally and completely without merit or for the sole purpose of harassing an opposing party."  *Id.* § 128.5.  Here, the Court does not conclude that Apple's motion was frivolous or solely intended to cause unnecessary delay, and it denies AliveCor's request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Apple's motion to dismiss AliveCor's FAC to the extent it seeks to assert liability or obtain damages for the Challenged IPRs or other alleged litigation conduct.  AliveCor has not articulated any means by which it could avoid *Noerr-Pennington* immunity or establish the causal connection required under *Hynix*.  Thus, the Court concludes amendment would be futile and dismisses without leave to amend.  Apple's motion to strike is DENIED.

**IT IS SO ORDERED.**

Dated: June 30, 2023

_____
JEFFREY S. WHITE
United States District Judge